UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 7:08-74-KKC

PAUL G. SMITH                                                            PLAINTIFF

v.                                **OPINION AND ORDER**

MICHAEL ASTRUE,
*Commissioner of Social Security*                                     DEFENDANT

\* \* \* \* \* \* \*

This matter is before the Court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff's motion is GRANTED in part and DENIED in part, and the case is REMANDED to the ALJ for further consideration.

**I.**     **Introduction**

On October 23, 2003, Plaintiff filed an application for disability insurance benefits, alleging disability beginning February 6, 1992. The claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Valerie A. Bawolek on October 25, 2005, in Logan, West Virginia. Plaintiff appeared and testified, as did a medical expert, Jeffrey Boggess, Ph.D., and a vocational expert, Lisa Goudy. After the hearing, the ALJ allowed Plaintiff to submit additional evidence, and the ALJ held a supplemental hearing on February 14, 2006, in Logan, West Virginia. Plaintiff appeared and testified at the second hearing, as did a medical expert, Judith Brendemuehl, M.D., and a vocational expert, Patricia McFann. After reviewing the evidence submitted and hearing testimony, the ALJ denied Plaintiff's application in a written decision

1

issued on June 23, 2006. The Appeals Council denied Plaintiff's request for review, and, therefore, the ALJ's decision stands as the Commissioner's final decision and is now ripe for review under 42 U.S.C. § 1383(c)(3).

## II. Discussion

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

### B. Overview of the Process

It is the responsibility of the Commissioner of Social Security, acting through the ALJ, to determine whether a social security disability claimant qualifies as legally disabled, and is thus deserving of disability insurance benefits and supplemental security income. *See* 20 C.F.R. § 404.1527(e)(1). To make this determination, the ALJ follows a five-step sequential analysis. First, the claimant must show that he is not engaging in substantial gainful activity. *Id.* § 404.1520(a). If the claimant is engaging in substantial gainful activity, then he is not disabled regardless of his medical condition, age, education, or work experience. *Id.* § 404.1520(b). Second, the claimant must show that he has a mental or physical impairment or combination of impairments that is severe. *Id.* § 404.1520(a). If the claimant does not have a severe mental or physical impairment or combination of impairments, he is not disabled. *Id.* § 404.1520(c). Third, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals a listed impairment. *Id.* § 404.1520(a). If the claimant's impairment or combination of impairments meets or medically equals a listed impairment, then he is disabled. *Id.* § 404.1520(d). If not, then the ALJ must determine the claimant's residual functional capacity before proceeding to the fourth step. *Id.* § 404.1520(e). In the fourth step, the ALJ determines if the claimant has the residual functional capacity to perform his past relevant work. *Id.* § 404.1520(a). If the claimant cannot perform his past relevant work, then the burden shifts to the Commissioner in the final step to show that there is sufficient work in the national economy that the claimant can perform given his residual functional capacity, age, education, and work experience. *Id.*; *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If no such work exists, then the claimant is legally disabled. *Id.* § 404.1520(a).

C.   **The ALJ's Decision**

In her written decision, the ALJ outlined the five-step analysis set forth in the Social Security Administration's disability regulations and found at 20 C.F.R. §§ 404.1520 and 416.920. [Administrative Transcript ("Tr."), p. 14A-15.]. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. [Tr. 15]. Next, the ALJ found that Plaintiff had the following medically determinable impairments: pneumoconiosis, chronic obstructive pulmonary disease, degenerative disc disease, and back strain. [Tr. 16]. However, the ALJ concluded that these impairments were not severe individually or in combination. [Tr. 17]. Accordingly, the ALJ ended the analysis and concluded that Plaintiff was not under a disability as defined in the Social Security Act during the relevant time period. [Tr. 20].

**D.      Analysis**

**1. The ALJ's Findings of Medically Determinable Physical and Psychological Impairments**

Plaintiff first challenges the ALJ's determination that he did not have a medically determinable psychological impairment. As evidence of his psychological impairment, Plaintiff cites medical opinions from Dr. Musgrave, Dr. Cooke, and Dr. King.[1]

The Social Security Regulations require an ALJ to weigh a medical opinion based on the relevant medical evidence supporting it and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(3)-(4). In this case, the ALJ properly discounted Dr. Musgrave's medical opinion regarding Plaintiff's psychological impairment because it was unsupported by relevant medical evidence. As the ALJ noted, although Dr. Musgrave concluded that Plaintiff had a 9%

---

[1]Although Plaintiff cites a medical opinion provided by a Dr. Samuel J. King, the Court was unable to find any reference to Dr. King in the ALJ's opinion, the index of the administrative record, or on the pages cited by Plaintiff. Accordingly, the Court disregards any reference to a medical opinion by Dr. King.

4

psychiatric impairment rating, he did not identify any symptoms or diagnosis to support this conclusion. [Id.]. Neither did Dr. Musgrave identify any objective medical evidence in support of his conclusion that Plaintiff had a 9% psychiatric impairment rating. [Tr. 172-181]. Rather, the medical reasons Dr. Musgrave's cited to support his conclusion relate exclusively to Plaintiff's physical impairments, namely, his back injury and cardio-pulmonary disease. [Id.]. Further, as noted by Dr. Boggess and discussed below, the record provides no evidence of a psychological impairment. Accordingly, Dr. Musgrave's assessment of Plaintiff's psychological impairment is inconsistent with the weight of the evidence in the record. For these reasons, the ALJ properly rejected Dr. Musgrave's assessment of Plaintiff's psychological impairment.

The ALJ also properly rejected Dr. Cooke's psychological assessment because it was not consistent with the record as a whole and otherwise unsupported by relevant evidence in the record. Dr. Cooke diagnosed Plaintiff with atypical depressive disorder, atypical anxiety disorder, mild mental retardation, developmental reading disorder, and he assigned Plaintiff a Global Adaptive Functioning score of 50. [Tr. 587]. Although the ALJ does not fully explain her analysis until later in the opinion, she rejected Dr. Cooke's assessment because of the testimony provided by Dr. Boggess at the first administrative hearing. [Tr. 20]. There, Dr. Boggess testified that there was no evidence of psychological impairment in the record. [Tr. 20, 1157]. He also testified that Dr. Cooke's diagnosis of mild mental retardation was inconsistent with Plaintiff's employment history as a mine foreman. [Tr. 1155-1156]. Regarding the atypical depressive disorder and atypical anxiety disorder, Dr. Boggess stated that Dr. Cooke's diagnoses indicate that Plaintiff doesn't meet the criteria for a full diagnosis although some symptoms of those disorders are present. [Tr. 1156]. Dr. Boggess also pointed out inconsistencies between Dr.

5

Cooke's assessment diagnosis of Plaintiff's Global Adaptive Functioning score of 50 and the diagnosis of "atypical" depression and anxiety. [Tr. 1158-1159].

Given the foregoing, the ALJ was faced with two inconsistent medical opinions regarding Plaintiff's psychological impairments. As the ALJ noted, Dr. Cooke's opinion was inconsistent with evidence in the record and based on Plaintiff's self-reported history and subjective allegations. Regarding the Plaintiff's subjective allegations, the ALJ found Plaintiff to be not credible, and that finding is not subject to review. *Nelson*, 195 Fed. Appx. at 468. Additionally, Dr. Boggess's testimony demonstrated that Dr. Cooke's opinion was internally inconsistent. In this case, the ALJ properly discounted Dr. Cooke's opinion because it was not consistent with the record as a whole and otherwise unsupported by relevant evidence in the record. Further, Dr. Boggess's conclusion that the record does not support a finding of psychological impairment provides substantial evidence for the ALJ's determination that Plaintiff does not have a medically determinable psychological impairment. Accordingly, the ALJ's finding is affirmed.

**2. The ALJ's Assessment of the Severity of Plaintiff's Impairments**

Plaintiff also challenges the ALJ's finding that his medically determinable impairments are not severe. Because the evidence relied on by the ALJ demonstrates that Plaintiff's impairments meet the appropriate *de minimus* severity standard, the ALJ's finding must be reversed.

The Social Security Regulations outlining the ALJ's severity analysis state that if the claimant does "not have [an] impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities, [the ALJ] will find that

[he or she] [does] not have a severe impairment." 20 C.F.R. § 404.1520(c); *See also* 20 C.F.R. § 404.1521(a). The Sixth Circuit has construed the severity regulations as a *de minimus* hurdle in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* As the Sixth Circuit has explained:

> [I]t is now plain that in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation. Nevertheless, Congress has approved the threshold dismissal of claims obviously lacking medical merit, because in such cases the medical evidence demonstrates no reason to consider age, education, and experience. In other words, as this court has recognized, the severity requirement may still be employed as an administrative convenience to screen out claims that are "totally groundless" solely from a medical standpoint.

*Id.* (citations omitted).

The ALJ cited Dr. Brendemuehl's hearing testimony as evidence that Plaintiff's medically determinable impairments are not severe. [Tr 19-20]. However, examination of Dr. Brendemuehl's testimony and the records she reviewed demonstrates that when analyzed under the appropriate *de minimus* standard, Plaintiff's impairments are severe. Dr. Brendemuehl's testimony began as follows:

> ALJ: All right, Dr. Brendemuehl, for the period of time since the alleged onset date that's, we'll say February of 1992 through 1997, is there any condition that met or equaled the listing?
>
> Dr.: No.
>
> ALJ: Were there severe physical conditions that would interfere with Mr. Smith's ability to work?
>
> Dr.: Not according to record. Here's what happened. If you read these records, and, of course, hindsight is where we are, I have a 1992 occupational pneumoconiosis

7

> allegations. FED 1 in 1992 was 3.8 liters, which is normal. I have pulmonary function tests that were repeated of record in 2003, his FED 1 in 2003 was 2.86 liters, which is 78% of predicted, which is still a reasonable FED 1. Now he does have chest x-ray evidence of these miliary deposits and spine deposits which are consistent with the occupational pneumoconiosis, but as far as pulmonary function tests and we certain are nowhere close to listing level or really being able at 3.68 liters to attribute that finding to consistent complaints of shortness of breath. 3.68 liters, that being pretty much pretty good. . . .

[Tr. 1172-1173]. Later, when questioned by Plaintiff's attorney, Dr. Brendemuehl again discussed the pulmonary function test and the x-ray evidence:

> Dr.: . . . The measure of function is the pulmonary function test and that's the critical number that we're looking at here in terms of whether or not there's any disability based on what's happened as far as his ability to function.
>
> Atty: With a person showing the x-ray findings, accepting the pulmonary function studies, but with a person having the x-ray findings that you summarized here today with the lungs, would that have an impact on the person's ability to work around dust, the environment –
>
> Dr.: He shouldn't go back in the dust. I mean, that's clear that he shouldn't go back in the dust, nor should he smoke.

[Tr. 1176]. This testimony demonstrates that Plaintiff's pneumoconiosis is not totally groundless from a medical standpoint. Dr. Brendemuehl did not dispute the x-ray evidence or Dr. Musgrave's diagnosis, rather, she confirmed that diagnosis as being consistent with the evidence. Further, Dr Brendemuehl emphatically reiterated Dr. Musgrave's opinion that Plaintiff should not work around dust because of his lung disease. Although Dr. Brendemuehl concluded that Plaintiff's impairment did not limit his ability to function, her testimony cannot fairly be read to say that Plaintiff's impairment is "obviously lacking medical merit." *Higgs*, 880 F.2d at 862. The medical evidence establishes that Plaintiff cannot return to his coal-mining employment because of his occupational pneumoconiosis. Therefore, his pneumoconiosis represents a

8

significant limitation on his ability to work even though it may not have developed to the point of adversely affecting his ability to function by February of 1992. Accordingly, the ALJ's finding that Plaintiff's pneumoconiosis is not a severe impairment must be reversed.

The record also demonstrates that Plaintiff's back strain is a severe impairment. When dealing with impairments that cause pain, the Sixth Circuit has cautioned that the mere diagnosis of the impairment says nothing about its severity. *Higgs*, 880 F.2d at 863. Further, "[w]hen doctors' reports contain no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition, [the Sixth Circuit] has regularly found substantial evidence to support a finding of no severe impairment." *Long v. Apfel*, 1 Fed. Appx. 326, 331-332, 2001 U.S. App. LEXIS 483, at * 15 (6th Cir. 2001). However, in this case, although the medical records are few, those available indicate that Plaintiff's back strain is a severe impairment.

Regarding the duration of Plaintiff's pain, reports from Dr. Musgrave and Dr. Shafer reveal that Plaintiff injured his back in early February of 1992 while working. [Tr. 179, 613]. After a physical examination in September of 1992, Dr. Musgrave noted a limited range of motion in Plaintiff's spine. [Tr. 179]. He also noted Plaintiff's complaints of back and leg pain as well as his use of a T.E.N.S. unit. [Id.]. Dr. Shafer's report from June 13, 1995, over three years later, notes that Plaintiff still complained of back and leg pain at that time. [Tr. 613]. These complaints are consistent with Plaintiff's medications as listed by Dr. Shafer in her report. [Id.]. Regarding the intensity of Plaintiff's pain, the record indicates that it was of sufficient intensity to warrant a prescription pain medication several years after his injury. Dr. McElwain's report from March of 1994 indicates that Dr. Shafer had prescribed Plaintiff Tylenol #3 and Tylenol #4,

9

and he noted after a later visit that Plaintiff could not afford his medication and had been "getting a few Tylenol off some friends." [Tr. 610, 611]. Although these records do not conclusively establish that Plaintiff's pain is disabling as he alleges, they do demonstrate that Plaintiff's back strain is a severe impairment when judged by the appropriate *de minimus* standard. The ALJ's finding that Plaintiff's back pain is not severe must therefore be reversed.

### III. Conclusion

Because substantial evidence does not support the ALJ's finding that Plaintiff's impairments are not severe, the decision must be reversed and the case is remanded for the ALJ to complete the five-step disability determination. In doing so, the Court reminds Plaintiff that his impairments are severe because they meet a *de minimus* standard from a medical standpoint. Whether or not Plaintiff is entitled to benefits requires further analysis, and the Court has no opinion regarding the ultimate success of Plaintiff's claim. Because the Court agrees that Plaintiff's impairments are severe, his motion for summary judgment will be granted in part. However, the appropriate remedy is to remand the case to the ALJ for completion of disability determination, and the Court makes no ruling on Plaintiff's entitlement to disability benefits. Therefore, to the extent that Plaintiff's motion claims entitlement to benefits, his motion is denied.

Accordingly, for the reasons discussed, the Court HEREBY ORDERS that:

(1) Plaintiff's motion for Summary Judgment is DENIED insofar as it challenges the ALJ's third finding;

(2) Plaintiff's motion for Summary Judgment is GRANTED insofar as it challenges the ALJ's fourth finding, and the ALJ's fourth finding is REVERSED;

(3) Defendant's motion for Summary Judgment is GRANTED insofar as it supports the ALJ's third finding;

(4) Defendant's motion for Summary Judgment is DENIED insofar as it supports the ALJ's fourth finding; and

(5) This case is REMANDED to the ALJ for completion of the disability determination in accordance with this opinion.

Dated this 24th day of June, 2009.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge